TUTTLE *v.* DETROIT, JACKSON & CHICAGO RAILWAY CO.

1. STREET RAILWAYS — EVIDENCE — ADMISSIONS — INCONSISTENT CLAIMS.

Where plaintiff claimed, in a personal injury claim, that he was thrown to the ground by the starting of defendant's car as he was in the act of alighting, and his testimony was disputed by evidence of his admissions, and by his assertions on cross-examination, inconsistent with his claims on direct examination, it was proper to leave to

the jury his claim that the car started quickly and unexpectedly while he was descending from the step. ·

2. SAME—BURDEN OF PROOF—QUESTION OF FACT.
   It was a question of fact for the jury to determine the matter of plaintiff's credibility; the burden resting on him to establish his freedom from contributory negligence did not change the rule.

3. SAME—NEGLIGENCE.
   Passengers are entitled to a reasonable time in which to get off after the car has stopped; the duty of the carrier is not discharged until the passenger, alighting with reasonable expedition and exercising due care, with sufficient time to exercise it, is free from the car.

4. SAME.
   *Held*, that the questions of negligence and contributory negligence were properly submitted to the jury and the verdict was not excessive.

Error to Washtenaw; Kinne, J.  Submitted June 6, 1916.  (Docket No. 5.)  Decided September 27, 1916.

Case by William Tuttle against the Detroit, Jackson & Chicago Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cavanaugh & Burke,* for appellant.

*John Kalmbach* and *Arthur Brown,* for appellee.

STEERE, J.  In this action plaintiff recovered a verdict and judgment against defendant of $300 for injuries sustained while alighting from one of its interurban cars on September 18, 1912, at the so-called Cooper crossing, a farm stop near plaintiff's place of residence, 1½ miles easterly from the village of Chelsea, in Washtenaw county.

The negligence charged against defendant in plaintiff's declaration, and upon which the case was submitted to the jury, is, briefly, that after defendant's

car upon which plaintiff was a passenger came to a stop at Cooper's crossing to allow him to alight, and just as he was in the act of stepping down from the rear platform in the act of alighting, exercising due care on his part, defendant suddenly and without warning started the car forward, causing him to lose his balance, throwing him violently to the ground upon his face, and seriously injuring him.

No evidence was introduced upon the trial by defendant, but at the conclusion of plaintiff's testimony its counsel moved for a directed verdict of no cause of action upon the following grounds:

"(1) Because the said plaintiff was guilty of contributory negligence.

"(2) Because from the testimony of the plaintiff he jumped off the car while the said car was in motion.

"(3) Because the declaration alleges the cause of the accident to be that the car suddenly started while plaintiff was in the act of stepping off, causing him to lose his balance, whereas the proof on the part of the plaintiff shows that after the car had started plaintiff jumped off while said car was in motion.

"(4) Because there is a material variance between the allegations of the declaration and the proofs of the plaintiff as to the manner in which the accident occurred."

This motion being denied, substantially the same propositions were embodied in requests to charge, and later in a motion for a new trial, with the added reason that the verdict was against the weight of evidence. Proper steps were seasonably taken to save all adverse rulings for review.

The essence of defendant's contention, as we understand it, is that no other witness saw plaintiff at the exact time he parted company with the car, and he, as the sole witness to the manner of his alighting, not only stated both in and out of court that he jumped from the car while it was in motion, thereby admit-

ting negligence on his own part, but his conflicting and inconsistent account of how it happened, taken in its entirety, failed to sustain with any legal evidential force against his own contradictions, the burden of proof resting upon him to make out a *prima facie* case of his freedom from contributory negligence and actionable negligence on the part of defendant in the particulars charged in his declaration.

Plaintiff was a farmer 58 years of age, and had been engaged in farmwork during the day in question. In the evening after his day's work was done he went to Chelsea on an electric car of defendant's which passed his place about 7:25 p. m. His son Clare, a young man about 25 years old, who had worked with him during the day, also went to Chelsea that evening, but not on the same car. They met at the waiting room in Chelsea, and returned together on the same car, leaving there shortly after 10 p. m. Plaintiff was carrying a loaf of bread he had purchased, and sat down inside the car, near the center, and paid his fare to the conductor before reaching Cooper crossing. His son rode on the rear platform. Another young man named Weisman was also a passenger for Cooper crossing. The car slowed down as it approached the crossing, and, as all three testified, came to a brief stop, when they quickly got off, and it immediately started on. In alighting plaintiff fell and was injured, seriously and permanently as he claimed; and his physician was of the same opinion. The nature and extent of his injuries, however, which is questioned by defendant, would be in any event an issue of fact calling for no discussion here.

Weisman rode in the forward part of the car and left it at the front. Plaintiff sat centrally or further back in the car, and his son rode on the rear platform. They got off at the rear. The son was ahead, and

could, or did, not see whether his father stepped, or jumped, or was thrown from the car.

Plaintiff's most connected account of the accident, given on direct examination, is as follows:

"When the car commenced to slack down, I got up out of my seat and went out the door and started down the steps. My son went down right ahead of me. The car stopped. My son had just stepped off when it stopped. He stood right down on the last step, and when the car stopped he stepped right off, and I had a loaf of bread under this arm, and took this loaf of bread and changed it to the other arm, and was just going to get hold of this rod, and I was going to follow, and the car started. I couldn't tell how I got off, or, what. The next thing I knew the boy was holding me up and I was in that hole. Just how I left the car or struck the ground I never could tell. I lost my head or something. I was just going to make that hole or to jump over it. I couldn't tell whether I got that rod. I was just going to get hold of it. I missed it. I don't remember Mr. Weisman being there at all."

It appeared that some time after the accident plaintiff went to consult an attorney he knew, to whom he states he had gone before "more or less in anything like that," but the attorney told him he was professionally connected with defendant, and gave him the address of its claim agent with the suggestion that he communicate with him. This plaintiff did by mail, in a somewhat rambling letter telling of his claim and sufferings, the cause of which he outlines in part as follows:

"The conductor didn't give me time to get off before starting the car. It was a dark, rainy night, and they was past the crossing, and I jumped in a hole, and was hit by the car, and haven't been able to do a day's work since."

He also, when in Detroit, went to see defendant's claim adjuster, and signed a statement written out by

a young man, who testified he was then claim adjuster for the Detroit United Railways, and obtained the information contained in the statement entirely from plaintiff as he told his story "exactly, word for word," and that plaintiff read it before signing. It concludes:

"I have read over the above and same is correct. I think that step of car hit my chest."

The portion of this statement which it is urged particularly negatives his testimony on the trial, and shows admitted contributory negligence is as follows:

"Upon approaching that point I left my seat in car, and started for rear platform. My boy, Clare Tuttle, was with me at the time, and he was ahead of me, and was on step of car. Upon reaching the crossing he alighted while car was still in motion, and I started down step with intention of getting off, and as I started down steps I noticed that car was again starting to pick up speed, and upon noticing that I hurried myself and jumped off, whilst car was going. I think I could have safely jumped off if it hadn't been for a hole alongside track which I fell into."

Plaintiff admitted that he signed the statement which the agent wrote out and tried to read it over, but claimed he could not do so very well, because he did not have his glasses; insisted that he did not make certain statements appearing in it, and that he told the story in substance, "but not in the same words," as he told it on the stand, as near as he "possibly could"; denied he stated that his son got off before the car stopped, or that he positively stated he jumped, or that he did in fact jump, unless as he fell; that he knew he was going to "get hold of that rod and jump off," but "couldn't say what I did."

It may be conceded without going into further details that plaintiff in the course of a rather pressing cross-examination made conflicting assertions and de-

nials difficult to reconcile, and inconsistent with his at other times claimed lack of memory and confusion as the result of his fall, but we cannot find that this carries his testimony beyond the well-settled rule that the credibility of a witness and consistency of his statements are matters for the jury rather than for the court.

Although they did not see him at the exact time he left the car, the testimony of his son and Weisman is competent to consider for its bearing upon plaintiff's insistent assertion of the essential facts that the car had stopped and started up again before he had time to get clear off it in alighting; for the testimony of each witness is to be weighed in connection with that of others and in the light of all facts and circumstances found proven in the case.

His son Clare, who rode upon the rear platform, testified that as the car slowed down for the crossing he saw his father near the rear door; that he stepped "quite fast like to get off the car, and must have been very close behind," but just where he could not swear, as he went ahead and stood on the last step waiting for the car to stop, which it did with the rear opposite a hole, or ditch, across which he stepped; that the "car barely came to a stop and went right on," and as he balanced, and squared himself on his feet, after stepping across, "ready to look around," he saw his father "in that hole on his face in a frog position," apparently unconscious; that as he proceeded to care for him Weisman came up from where he got off forward and helped him, and after his father came to he (Clare) assisted him home alone.

Weisman, who was riding near the front of the car, testified that as it approached the crossing he went out forward, and stood on the bottom step until it stopped, about a length past the crossing, when he stepped off; that it just stopped and went right on

again, "couldn't have remained standing over a jiffy," and he heard no signal for it to start; that it was a dark, cloudy night, and he "kind of heard some one groaning," and went back about the length of the car where he found Mr. Tuttle "in the hole" with his son lifting him up and he helped a little, amongst other things picking up plaintiff's hat and putting it on his head and giving the loaf of bread to his son; that while unable to say whether or not plaintiff was unconscious "he did not say anything to me when I raised him up."

That the car halted at this crossing to discharge passengers, and plaintiff, who had paid his fare to that point, was in the act of getting off when he fell, is undisputed. Whether it had stopped and quickly started up while he was in the act of alighting was, we think, fairly a question for the jury under the testimony in this case.

That passengers are entitled at a stopping place to a reasonable time in which to get off after the car has stopped and the duty of the carrier is not discharged until the passenger, alighting with reasonable expedition and exercising due care, with given time to exercise it, is free from the car, is settled law. *Finn* v. *Railway Co.,* 86 Mich. 74 (48 N. W. 696) ; *Britton* v. *Railway Co.,* 90 Mich. 159 (51 N. W. 276) ; *Burke* v. *Traction & Electric Co.,* 147 Mich. 172 (110 N. W. 524) ; *Braun* v. *Railway Co.,* 183 Mich. 569 (150 N. W. 144).

The issue for the jury was a plain and simple one with no complicated questions of law involved. The jury were plainly told by the court that to recover plaintiff must show that he was free from contributory negligence, and, as charged in his declaration, "that the car stopped in order to allow the plaintiff and other passengers to alight therefrom, and that it started up before it had given the plaintiff a reasonable time in

which to alight, and that in his effort to alight, or while alighting, he received injuries in consequence thereof," etc.; that if he jumped from the car before it came to a full stop, or "if the accident occurred by reason of a hole in the highway, he could not recover," nor "by reason of failure to ring the bell."

We are of opinion that the testimony, taken as a whole, fairly presented an issue of fact to go to the jury which was plainly explained and submitted to them by the court under a sufficient charge, are unable to find that the verdict was excessive or so palpably against the weight of evidence as to demand that it be set aside, and discover no good reason in law for disturbing the judgment of the trial court.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.