## BOLTON *v.* CITY OF DETROIT.

1. CARRIERS—BUS PASSENGERS—STANDARD OF CARE.
   A carrier has the common-law duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier.

2. SAME—PASSENGERS—STOPPING PLACE—DUTY OF CARE.
   Passengers on a public carrier are entitled, at a stopping place, to a reasonable time in which to get off after a car has stopped and the duty of the carrier is not discharged until the passenger, alighting with reasonable expedition and exercising due care, with time given to exercise it, is free from the car.

3. SAME—PASSENGERS—BOARDING—ALIGHTING—STANDARD OF CARE.
   Common experience teaches that a passenger boarding a car or bus must anticipate that it may start before he is seated, and that the movement may be abrupt, but upon alighting from a carrier, a passenger has the right to assume that it will remain stationary until those who are being discharged have an opportunity to alight, and its sudden movement prior to that time would be unexpected.

4. SAME—NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE.
   The mere happening of an accident is not of itself evidence of negligence, but the law does not place upon passengers of public carriers the burden of demonstrating the exact breach of duty committed by the carrier which caused injury to the passenger, such facts oftentimes being solely within the knowledge of the carrier.

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur 2d, Carriers § 916.
[2, 3] 14 Am Jur 2d, Carriers § 888.
[4, 5] 14 Am Jur 2d, Carriers § 1153.
[6] 14 Am Jur 2d, Carriers § 1164.
   Motor carrier's liability for injury to passenger by sudden stopping, starting, or lurching of conveyance. 57 ALR2d 5.
[7] 5 Am Jur 2d, Appeal and Error § 886.

5. SAME—NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE.

Negligence on the part of a carrier may be inferred from surrounding facts and circumstances where they are such as to remove the case from surmise and conjecture and place it within the field of legitimate inferences deduced from established facts.

6. SAME — DIRECTED VERDICT — NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

Directed verdict for defendant common carrier in plaintiffs' action for damages for injuries suffered by plaintiff wife when defendant's bus made a sudden jerk while stopped for passengers to alight, based upon plaintiff's failure to introduce evidence to show that the sudden jerk was caused by negligence on the part of defendant *held,* reversible error, since defendant had a duty to maintain its bus in a stationary position until all passengers had safely alighted, it not being incumbent upon plaintiffs to show what caused the bus to jerk after stopping, such event being so unusual as to allow reasonable men to conclude that it would not have occurred if defendant had exercised due care.

7. APPEAL AND ERROR—MOTION FOR DIRECTED VERDICT—EVIDENCE.

Testimony and all legitimate inferences therefrom must be viewed in the light most favorable to plaintiff in determining whether the trial court's denial of defendant's motion for directed verdict was proper.

Appeal from Common Pleas Court of Detroit; Connolly (John W.), J. Submitted Division 1 December 13, 1966, at Detroit. (Docket No. 1,787.) Decided April 2, 1968.

Complaint by Ruth Bolton against the City of Detroit, Department of Street Railways, for injuries sustained from a fall as plaintiff was alighting from defendant's bus. Derivative action by Leroy Bolton for loss of consortium. Directed verdict for defendant. Plaintiffs appeal. Reversed.

*Riseman, Lemke & Piotrowski,* for plaintiffs.

*Manuel Zechman* and *Michael F. Peters,* for defendant.

LEVIN, J.   Ruth Bolton brought suit for injuries sustained when she fell to the ground while alighting from one of defendant's buses.   The trial court granted defendant's motion for directed verdict at the close of plaintiffs'[1] proofs, and the plaintiffs have taken this appeal.

Mrs. Bolton testified that the bus had stopped, the door had opened and that she had started down the steps when the bus "jerked", "shook", "or made some kind of jog or something", or "a lunge or something", or "moved", causing her to lose her balance, whereupon she fell off the bus and sustained injury. Her testimony was corroborated by a witness who testified that the bus had stopped, and that just as Mrs. Bolton reached the last step "the bus kind of jerked" and she fell.

The defendant asserts that plaintiffs' proofs were deficient in failing to establish that the alleged jerk or jolt was caused by the defendant and relies on *Bradley* v. *Fort Wayne & E. R. Co.* (1892), 94 Mich 35, 38.   In that case the car was in motion and about to stop but had not as yet stopped when the plaintiff, allegedly by some sudden motion of the car, was thrown off and injured.   The court denied recovery stating there was no evidence showing or tending to show what caused the plaintiff to fall.   "It may have been a sudden jolting of the cars, for which the conductor or driver was in no manner responsible * * * upon the plaintiff's own theory, it was a sudden jerk,—from what cause no one pretends to know."   Accord: *Etson* v. *Fort Wayne & B. I. R. Co.* (1896), 110 Mich 494.[2]

---

[1] Leroy Bolton, husband of the injured plaintiff, claimed loss of consortium and medical expenses.

[2] Compare *Burke* v. *Bay City Traction & Electric Co.* (1907), 147 Mich 172, where the car was in the process of slowing down but had not as yet stopped. It was alleged that it suddenly started up, throwing the plaintiff to the ground. Recovery was allowed and *Bradley* and *Etson* were distinguished on the ground that there was

A carrier has the common law duty of due care—
"the duty to exercise such diligence as would be
exercised in the circumstances by a reasonably pru-
dent carrier." *Frederick* v. *City of Detroit* (1963),
370 Mich 425, 437. Earlier, in *Tuttle* v. *Detroit, J.
& C. R. Co.* (1916), 193 Mich 390, it was claimed that
the car had stopped and quickly started up while
the passenger was in the act of alighting. The court
stated (at p 397):

"That passengers are entitled at a stopping place
to a reasonable time in which to get off after the
car has stopped and the duty of the carrier is not
discharged until the passenger, alighting with rea-
sonable expedition and exercising due care, with
given time to exercise it, is free from the car, is
settled law."[3]

The precedents recognize a distinction between a
sudden increase or decrease of speed during the
course of travel and sudden movement while the
passenger is in the act of alighting from the vehicle.
*Selman* v. *City of Detroit* (1938), 283 Mich 413, 419.
It is conceded in the case before us that defendant's
bus had stopped before Mrs. Bolton attempted to
alight.[4]

---

a difference between acceleration of speed between stopping places
and a sudden starting up while the passenger was alighting. See
also *Reese* v. *Detroit United Railway* (1910), 159 Mich 600, where
the court affirmed a judgment for plaintiff in a case where there
was testimony that after the car had stopped the plaintiff proceeded
to the door to alight, and that while standing and awaiting her turn
to step down upon the steps the car was suddenly started. See also
*Dykstra* v. *Grand Rapids, G. H. & M. R. Co.* (1911), 165 Mich 13.

[3] In *Beattie* v. *Detroit United Railway* (1909), 158 Mich 243, 246,
the court adopted the following text: "The time of stoppage must
be such as to enable the passenger attempting to get on or off to
reach a place of safety." Compare *Britton* v. *Street Railway Com-
pany of Grand Rapids* (1892), 90 Mich 159; *Bartle* v. *Houghton
County Street-Railway Co.* (1903), 132 Mich 290, 293.

[4] "The coach was at a complete standstill and was not moved at
all, before, during, and after plaintiff's alighting therefrom." (From
answer to amended declaration.)

In *Wood* v. *Lake Shore & M. S. R. Co.* (1882), 49 Mich 370, the plaintiff claimed he stepped down to the lower step of the train while the cars were still in motion and that after they had come to a complete stop, while he was in the act of attempting to step down therefrom, they "started up with a jerk and threw me down." The Supreme Court affirmed the judgment the plaintiff obtained in the trial court.

On the issue before us, the facts in *Wood* and in the next cited case are substantially the same as those in the case at bar. In neither such cited case did the plaintiff establish by direct evidence the precise act or omission alleged to have constituted negligence.

In *Rogers* v. *City of Detroit* (1939), 289 Mich 86, recovery was allowed where it was claimed the streetcar had stopped, the exit doors had been opened, and just as the plaintiff "was about to step out of the door, the car jerked and she was thrown through the door to the pavement." The defendant claimed that when the doors were opened the power was cut off and, therefore, it was mechanically impossible[5] for the car to have jerked. As in the case at bar there was corroboration—a passenger there testified that the car "gave a violent jerk while Mrs. Rogers was standing near the opened exit doors ready to alight."

The Court in *Rogers* (at p 89) referred to *Selman* v. *City of Detroit, supra,* as recognizing a distinction between a situation involving sudden increases and decreases in speed and one where the "jerk"

---

[5] In *Finn* v. *Valley City S. & C. R. Co.* (1891), 86 Mich 74, 75, it was contended that plaintiff had failed properly to explain what caused the movement of the coach, and counsel for the defendant contended that such movement was impossible. The court reversed a directed verdict for defendant stating that "the question of the probability or possibility of the movement of the car was for the jury, and not for the court."

occurs while the passenger is alighting, and adopted the following statement from the opinion of another court:[6]

" 'But there is a difference, well recognized in the cases, between the case in which the passenger is fully and fairly upon the car, which he has just boarded, and the case in which a car has stopped to discharge passengers and they are in the act of leaving it. Our common experience teaches us that in the former case the passenger must anticipate that the car may start before he is seated, and that the movement may be abrupt. In the latter case the passenger has the right to assume that it will remain stationary until those who are being discharged have an opportunity to alight, and its sudden movement is unexpected.' " (p 89.)

In *Mitcham* v. *City of Detroit* (1959), 355 Mich 182, 189, it was claimed that the coach, *during the course of travel* and without warning, had swerved suddenly to the left and stopped abruptly pitching the plaintiff forward. The plaintiff prevailed, the court stating that the doctrine of *res ipsa loquitur* developed in actions between passengers and carrier, and, especially where the carrier is in sole possession of the facts, the often impossible burden of pointing out by direct evidence the specific breach of duty by the carrier had not invariably been thrown upon the injured passenger. (See discussion of *Mitcham* in *Gadde* v. *Michigan Consolidated Gas Company* [1966], 377 Mich 117, 120, 123.)

"And although the mere happening of an accident is not of itself evidence of negligence, *the law does not place upon the passenger the burden of demonstrating the exact breach of duty committed by the carrier,* such facts often times being solely within

6 *Laub* v. *Philadelphia R. T. Co.,* 97 Pa Super 323, cited in *Rogers.* Compare: *Cole* v. *Simpson* (1941), 299 Mich 589, and *Krouse* v. *Detroit United Railway* (1912), 170 Mich 438.

the knowledge of the latter. *Negligence may be inferred from the surrounding facts and circumstances* where they are such as to remove the case from surmise and conjecture and place it within the field of legitimate inferences deduced from the established facts." *Trent* v. *Pontiac Transportation Co., Inc.* (1937), 281 Mich 586, 588.[7] (Emphasis added.)

The parties agree the bus stopped to discharge passengers before Mrs. Bolton started down the steps. The defendant's answer states that it remained stationary while Mrs. Bolton was alighting. The plaintiffs offered evidence that it jerked as she stepped down. The defendant's brief argues that the bus did not jerk but merely tilted when Mrs. Bolton applied her weight to the steps. Whether the bus tilted (as defendant argues) or jerked (as Mrs. Bolton and her corroborative witness testified) is a matter to be resolved by a jury after all the evidence, including defendant's, is before them.

The defendant asserts that even if the jury decides that the bus did in fact jerk it may not, on the evidence offered by the plaintiff, find the defendant guilty of negligence without precise proof of wherein the defendant was negligent. In our opinion it is unusual enough for one of defendant's buses to jerk after stopping if the defendant exercises due care that reasonable men could conclude that the bus carrying Mrs. Bolton would not have jerked if defendant had exercised due care. Therefore, it was not necessary for the plaintiffs, in order to complete their proofs, to establish precisely what the defendant did or failed to do that caused the bus to jerk. Compare *Gadde* v. *Michigan Consolidated Gas Company, supra,* and *Lipsitz* v. *Schecter* (1966), 377 Mich 685, 690.

---

[7] Similarly: *Durfey* v. *Milligan* (1933), 265 Mich 97, 100.

Plaintiffs' evidence in this case was sufficient to withstand the motion for a directed verdict.[8] Reversed. Costs to appellant.

LESINSKI, C. J., and BURNS, J., concurred.

---

[8] In considering a motion for directed verdict, the testimony and all legitimate inferences therefrom must be viewed in the light most favorable to the plaintiff. *Hammerbacher* v. *Babechenko* (1957), 348 Mich 139, 150.