## MARTIN *v.* KING RIDING DEVICE COMPANY

1. NEGLIGENCE—EVIDENCE—SUFFICIENCY.

   Evidence that plaintiff was injured when thrown from defendant's amusement park ride when certain supporting cables broke, that there was visible evidence of wear on some of the cables in question, that one cable bore marks of wear it would not have had if it were properly fastened and an improper fastening would have been fully visible to the naked eye, and that there was a rust condition on some of the cables that was clearly visible and appeared to have originated before the accident *held*, sufficient to justify an inference that the accident would not have occurred had defendant properly inspected, maintained, and replaced its equipment, even though there was no proof that the rust condition existed prior to the accident, that certain missing fastenings were not in place when the accident occurred, and that certain other alleged defects were visible before the accident occurred.

---

REFERENCE FOR POINTS IN HEADNOTES

[1, 2]  4 Am Jur 2d, Amusements and Exhibitions §§ 81, 106, 107.

2. SAME—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—AMUSEMENT PARK RIDE.

> A person injured on an amusement park ride should not be forced to bear the often impossible burden of pointing out by direct evidence the specific breach of duty by the operator or owner of the ride resulting in his injury, especially where such owner or operator is in sole possession of the facts.

Appeal from Macomb, Spier (James E.), J. Submitted Division 2 March 6, 1968, at Detroit. (Docket No. 3,244.) Decided November 29, 1968. Leave to appeal denied May 14, 1969. 382 Mich 753.

Declaration by James L. Martin against King Riding Device Company, a Michigan corporation, King Amusement Company, a Michigan corporation, the city of Mt. Clemens, a municipal corporation, and the Greater Mt. Clemens Chamber of Commerce, a Michigan corporation, for injuries sustained in a fall from an amusement park ride owned and operated by King and located at a public event sponsored and promoted by the city of Mt. Clemens and the Mt. Clemens Chamber of Commerce. Action dismissed as to King Amusement Company, the city of Mt. Clemens, and Mt. Clemens Chamber of Commerce. Verdict and judgment for plaintiff against King Riding Device Company. Defendant appeals. Affirmed.

*Ward, Plunkett, Cooney, Rutt & Peacock (John A. DeMoss*, of counsel), for plaintiff.

*Sugar, Schwartz & Silver (Mark E. Schlussel*, of counsel), for defendant.

LEVIN, J. Plaintiff James L. Martin was a passenger in an amusement park ride known as the "Comet" operated by the defendant King Riding

Device Co., Inc. Comet passengers rode in open gondolas. Each gondola was suspended by 4 cables, 2 at the front and 2 at the rear of the gondola, from a steel arm emanating from a center pole which when activated spun the gondolas in a wide arc a number of feet above the ground.

While the plaintiff was thus being spun around, one of the cables attached to his gondola broke, and moments later 2 others snapped, leaving the gondola attached by one cable as it continued in its trajectory, plaintiff hanging on as best he could. Shortly after the gondola hit another object, the plaintiff lost his grip and fell out of the gondola into an excavated pit adjoining the side of the ride.

The jury awarded damages to the plaintiff. Defendant King Riding Device Co., Inc.[1] appeals from a denial of its motions for judgment notwithstanding the verdict and for a new trial. Defendant contends that the plaintiff failed to prove the accident was caused by the defendant's negligence.

At the trial the plaintiff sought to establish that the cables were defective and improperly fastened to the gondolas. The plaintiff showed that there had been various abrasions, breaks, fractures and other defects in the cables and fastenings, including deposits of rust.

Defendant claims that the plaintiff failed to prove that the rust condition existed prior to the accident or that the missing and broken fastenings had not been securely in place just before the accident occurred. Defendant further asserts that the conditions causing the fractures and the other metallurgi-

---

[1] Defendants, the city of Mt. Clemens and the Greater Mt. Clemens Chamber of Commerce, obtained directed verdicts upon the conclusion of plaintiff's proofs. The relationship between the other 2 defendants named in the caption, King Riding Device Company and King Riding Device Co., Inc., and whether they are in fact 2 separate companies, does not clearly appear on the record.

cal defects relied on by the plaintiff, which were the subject of extensive expert witness testimony, had not been shown to have been visible to the naked eye and thus there was no proof that the defendant should have detected the same during its daily maintenance inspection of the ride.

Plaintiff's expert witness testified that he found visible evidence of wear on some of the cables and that fractures, admittedly not visible to the naked eye, had occurred over an extended period of time in all 3 cables which broke.

He found evidence of abrasions on one of the cables which in his opinion would not have been present had the cable been properly fastened through a guide. If there was such improper fastening, it would have been entirely visible to the naked eye even if the abrasions themselves were not visible. The witness also testified that some of the abrasions he found were visible to the ordinary observer.

He stated that a cable fastened through a guide can carry a greater load than one not so fastened. He also stated that guides on 3 cables, including 1 on the cable that did not break, were cracked. He said that such cracks had, in the case of the guides on 2 of the 3 cables, occurred over a long period of time and were visible to the naked eye.[2]

He was "pretty sure" that the rusting over he found on one cable had occurred a long time prior to the date of the accident, but allowed that possibly it did not commence until later. He added that ordinarily he would not expect abrasions of the kind he found on that cable unless caused by "potential or a possible misuse." He testified that the "rather

[2] He was not asked whether the crack on the third cracked guide was so visible or had occurred over such a period of time. The cable with abrasions, which abrasions he said would not have been present if the cable had been properly fastened through a guide, was not 1 of the 3 cables on which he found a cracked guide.

extensive" rust condition he found on one of the cables would have been visible to the naked eye before the accident.

Plaintiff also mentions the defendant's failure to provide safety belts, asserting that had it done so the plaintiff would not have fallen out of the gondola, and further contends that a 5 minute maintenance inspection of the ride, which the defendant asserted it made daily, was inadequate, having in mind the number of different points of possible trouble.

We are persuaded that the evidence was sufficient to justify an inference that the accident would not have occurred had the defendant properly inspected, maintained and replaced its equipment. We do not think that the jury needed to pile inference on inference to reach that conclusion, nor do we think an inference of negligence was conjectural, as defendant contends. The testimony that in plaintiff's expert witness' opinion abrasions found on one of the cables would not have been present had the cable been properly fastened and that load bearing guides were visibly cracked, together with all the other evidence "circumstantial, direct, or whatsoever it may be * * * produced sufficient evidence from which a jury might make a finding of negligence." *Lipsitz* v. *Schechter* (1966), 377 Mich 685, 690.

The Michigan Supreme Court recently described the doctrine of *res ipsa loquitur* as "an uncertain blend of more fundamental concepts of law." *Gadde* v. *Michigan Consolidated Gas Company* (1966), 377 Mich 117, 125. In *Mitcham* v. *City of Detroit* (1959), 355 Mich 182, our Supreme Court stated that actions by passengers against carriers were classic situations for invoking that doctrine. In *Mitcham* the Court observed (p 189):

"We have not invariably thrown upon the injured passenger the often impossible burden of pointing out by direct evidence on his main case the specific breach of duty by the carrier resulting in injury, especially where the carrier is in sole possession of the facts."[3]

Other courts confronted with similar accidents, *i.e.*, breakage of ropes, cables or chains, have found the circumstantial evidence sufficient to permit an inference of negligence with no more and in some cases with less direct evidence of the specific breach of duty than appears in this case. See *Gromowsky* v. *Ingersol* (Mo App, 1951), 241 SW2d 60; *Styburski* v. *Riverview Park Co.* (1938), 298 Ill App 1 (18 NE 2d 92); and *Eldred* v. *United Amusement Co.* (1931), 137 Or 452 (2 P2d 1114), where passengers prevailed against operators of amusement park rides. Compare the following amusement park cases where the accident was caused other than by a cable or chain break and where the passenger prevailed: *Davidson* v. *Long Beach Pleasure Pier Co.* (1950), 99 Cal App 2d 384 (221 P2d 1005); *Harrison* v. *Southeastern Fair Association* (1961), 104 Ga App 596 (122 SE2d 330); *Lyons* v. *Wagers* (Tenn App, 1966), 404 SW2d 270; *Atkinson* v. *Wiard* (1941), 153 Kan 96 (109 P2d 160). See, also, the following rope, chain and cable break cases not involving amusement park rides: *Poulin* v. *H. A. Tobey Lumber Corp.* (1958), 337 Mass 146 (148 NE2d 277); *Hohmann* v. *Jones* (1937), 146 Kan 578 (72 P2d 971); *Golden* v. *Mannex* (1913), 214 Mass 502 (101 NE 1081).

Affirmed.

J. H. GILLIS, P. J., and ANDREWS, J., concurred.

---

[3] Compare *Bolton* v. *City of Detroit* (1968), 10 Mich App 589.